**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

QUILLIE L. HARVEY, JR.,
        *Plaintiff-Appellant,*

v.

G. JORDAN; E. CADEN; A.
HEDGPETH; L. E. SCRIBNER; J.
CELAYA; R. DERR; B. RANKIN; R. J.
BASS; T. VARIZ; J. W. LUMAN; S.
GOMEZ; T. SURGES; N. GRANNIS,
        *Defendants-Appellees.*

No. 07-15023

D.C. No.
CV-05-05398-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
April 8, 2010—Pasadena, California

Filed May 11, 2010

Before: Daniel M. Friedman,* Dorothy W. Nelson, and
Stephen Reinhardt, Circuit Judges.

Opinion by Judge Reinhardt

---

*The Honorable Daniel M. Friedman, United States Circuit Judge for
the Federal Circuit, sitting by designation.

6863

**COUNSEL**

Matthew C. Lapple, Covington & Burling LLP, San Diego, California, for the plaintiff-appellant.

Timothy J. McDonough, Deputy Attorney General, San Francisco, California, for defendants-appellees G. Jordan, A. Hedgpeth, L.E. Scribner, J. Celaya, R. Derr, B. Rankin, R.J. Bass, T. Variz, J.W. Luman, and S. Gomez.

Matthew M. Grigg (argued), Nancy E. Hudgins, Law Offices of Nancy E. Hudgins, San Francisco, California, for defendant-appellee E. Caden.

---

**OPINION**

REINHARDT, Circuit Judge:

Plaintiff Quillie Harvey is a prisoner at Salinas Valley State Prison. Prison officials used pepper spray to extract him from his cell on July 29, 2004, during a building-wide search of all prisoners' cells. This appeal involves two claims arising from that cell extraction.

First, Harvey alleges that the use of chemical sprays was excessive and has caused him to suffer long-term health problems. He contends that he mistakenly attributed those problems to a cold until a prison medical worker informed him of the true cause on September 14, 2004. He filed a grievance five days later, but prison officials rejected it as untimely.

Second, Harvey alleges that he was denied due process in connection with a disciplinary charge for refusing to comply with the cell search. Prison officials failed to hold a hearing on the charge within the time allotted by prison rules. When Harvey filed a grievance complaining about the delay and

requesting access to the videotape of the extraction, the prison officials granted the relief he requested, informing him in writing that a hearing would be provided and that he would be permitted to view the tape prior to the hearing. The decision was labeled a partial grant of the grievance because Harvey had stated that in the alternative he requested that the charge be dismissed. Five months later, Harvey complained that the hearing still had not been held and that he still had not been given the opportunity to view the tape. The prison officials construed that complaint as an appeal of their prior decision, and rejected it as untimely.

Harvey brought suit in district court. The defendants moved to dismiss his excessive force and due process claims for failure to exhaust administrative remedies under the Prison Litigation Reform Act, and the district court granted the motion. Harvey appeals that ruling. We have jurisdiction under 28 U.S.C. § 1291. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). We affirm the dismissal of the excessive force claim, reverse the dismissal of the due process claim, and remand for further proceedings consistent with this opinion.

## ANALYSIS

**[1]** "The Prison Litigation Reform Act requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting *Ngo*, 548 U.S. at 88).

**[2]** "The California prison system's requirements 'define the boundaries of proper exhaustion.' " *Marella*, 568 F.3d at

1027 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). A prisoner must file a grievance within fifteen working days of the event or decision that is the subject of his complaint, unless he lacked the opportunity and ability to file within the fifteen-day period. *Id.* Three levels of formal review are provided, and a prisoner exhausts the grievance process when he completes the third level. Cal. Code Regs. tit. 15 § 3084.1(a). Once he has been " 'reliably informed by an administrator that no remedies are available,' " however, a prisoner is "not required to 'exhaust further levels of review.' " *Marella*, 568 F.3d at 1027 (quoting *Brown v. Valoff*, 442 F.3d 926, 935 (9th Cir. 2005)).

## I.   The Excessive Force Claim

It is undisputed that Harvey did not file an excessive force grievance within fifteen working days of his cell extraction on June 29, 2004. Relying on *Marella*, however, Harvey argues that his failure to file a timely grievance does not defeat his claim. He contends that he lacked the opportunity to file a grievance until September 14, 2004, when he learned the true nature and origin of his injuries.

**[3]**  In *Marella*, the prisoner spent more than fifteen working days in the hospital, in the infirmary, and then in administrative segregation after the incident that gave rise to his complaint. 568 F.3d at 1026. The district court made no factual findings "as to whether Marella had access to the necessary forms and whether he had the ability to file during his stay in the hospital and prison infirmary, or during the administrative lockdown." *Id.* at 1027. We held that if he had no opportunity to file a grievance during that time, his failure to comply with the fifteen-day deadline would not defeat his claim. *Id.*

**[4]**  Harvey argues that, just as a lack of access to the necessary forms deprived Marella of the opportunity to file a timely grievance, a lack of access to the necessary informa-

tion as to the cause of his illness deprived him of the opportunity to file a timely grievance. He is in error. According to Harvey's own statements, he knew on the date of his cell extraction that prison officials had no justification for any of the cell searches conducted that day; that the pepper spray "worked its way into [the] vent system," causing obnoxious and powerful fumes to circulate throughout the prison; that he did not refuse to comply with the search or obstruct the view through his cell window; and that the pepper spray grenade "nearly incapacitated" him when it was thrown into his cell. Because Harvey could have filed an excessive force grievance based on those allegations alone, he was not prevented from filing a timely grievance because of a lack of information.

**[5]** The fifteen-day period for filing a grievance began to run from the date the excessive force was allegedly employed. Because Harvey did not file a grievance until well after that period had ended, he did not properly exhaust his administrative remedies. Accordingly, we affirm the district court's dismissal of the excessive force claim.

## II.   The Due Process Claim

The district court determined that Harvey appealed the partial grant of his due process grievance "four and a half months too late," and that his "untimely appeal did not satisfy the exhaustion requirement." This analysis reflects a misunderstanding of the sequence of events related to Harvey's due process claim.

On August 12, 2004, prison officials gave Harvey a "115" notice of disciplinary charges for his alleged failure to comply with the July 29, 2004 search of his cell. Prison regulations require that a hearing must be provided within thirty days of such a notice. While the notice is pending, certain privileges are revoked; for example, a prisoner may not file a request to transfer to another prison.

On January 3, 2005, Harvey filed a grievance complaining that five months had passed and he still had not been given a disciplinary hearing. He alleged that the delay violated his right to due process, and that the videotape of his cell extraction would prove that the disciplinary charges were unfounded. He wrote, "I request that I be given a hearing with the requested video tape to prove my innocence. If no hearing is given I request that this 115 be dropped and my status be given back." Prison officials granted Harvey's first request in a decision dated February 23, 2005. The decision stated that he would be given a hearing and access to the videotape, and informed him that he could appeal within fifteen working days if he was "not satisfied" with that resolution.

Harvey *was* satisfied, however, and therefore did not appeal. Only on August 28, 2005, after five months had passed without prison officials providing a hearing or access to the videotape, did Harvey use the appeal form to complain that he had not received the promised relief. He wrote, "I was suppose [sic] to receive an incident packet along with the video tape. I haven't gotten that or had a hearing . . . . . I would like this 115 heard . . . ."

Although Harvey's "reminder" grievance cannot reasonably be construed as an appeal of the decision granting him a hearing, the prison appeals coordinator treated it as such. The grievance was returned to Harvey with a rejection form that stated, "This appeal was delivered on 3/18/05. We got it back on 8/29/05. That's well over 15 days; this appeal is cancelled." The form also stated, "This screening action may not be appealed. If you allege the above reason is inaccurate, then attach an explanation . . . . [and] return this form to the Appeals Coordinator with the necessary information."

**[6]** Defendants argue that Harvey should have appealed the February 23, 2005 decision granting him a hearing and access to the videotape. There is no merit to that argument. An inmate has no obligation to appeal from a grant of relief, or

a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised. *See Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.").

**[7]** That Harvey initially requested alternative forms of relief does not change our analysis. Once the prison officials purported to grant relief with which he was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision. Were we to reach the contrary conclusion, any prisoner who expressed his willingness to accept more than one form of relief — demonstrating a flexibility that increases the likelihood of an outcome satisfactory to both the prisoner and the prison officials — would have no recourse when prison officials purported to grant one of those alternative forms of relief, but then failed to implement their decision.

**[8]** Defendants also argue that Harvey should have appealed the decision rejecting his "reminder" grievance as untimely. Even if we were to agree that a prisoner has an obligation to appeal the rejection of a grievance that he had no obligation to file, we would still reject defendants' argument. There is no obligation to appeal from a decision when the rejection form states that the "action may not be appealed." *See Marella*, 568 F.3d at 1027. This rule is no different when the "no appeal" statement is followed by language inviting the complainant to state in what manner the reason for the rejection is "inaccurate." *Id.* In any event, Harvey did not dispute that he had filed the form more than fifteen days after the original decision in his favor or contend that any of the facts in the rejection form were incorrect. Accordingly, he had no basis for asserting that the prison officials' reason for rejecting the form was "inaccurate."

**[9]** In sum, we hold that Harvey exhausted the administrative process when the prison officials purported to grant relief that resolved his due process grievance to his satisfaction. Accordingly, we reverse the district court's dismissal of his due process claim for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Harvey's excessive force claim, reverse the dismissal of his due process claim, and remand for further proceedings consistent with this opinion. Harvey shall recover his costs on appeal from defendants, except defendant Caden.

**AFFIRMED in part, REVERSED in part, and REMANDED.**