**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2288

JOHN DIAZ,

Appellant.

v.

JOHN PALAKOVICH; PEGGY EVERHART;
LISA HOLLIBAUGH; JANE DOE, I;
JANE DOE, II are sued in their official and individual capacities

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 1-07-cv-02190)
District Judge:  Honorable William W. Caldwell

Submitted under Third Circuit LAR 34.1(a)
on March 17, 2011

Before:  BARRY, CHAGARES and ROTH, Circuit Judges

(Opinion filed:  October 14, 2011)

O P I N I O N

**ROTH**, Circuit Judge:

John Diaz appeals the denial of leave to amend his complaint and the grant of

summary judgment on his claim that certain employees of the Pennsylvania Department

of Corrections, State Correctional Institution at Smithfield (SCI-Smithfield) engaged in a pattern or practice of opening his legal mail outside of his presence. For the reasons expressed below, we will vacate the order of the District Court granting summary judgment and denying leave to amend.

## I. **Background**[1]

### A. **Diaz's Grievances**

Pennsylvania Department of Corrections (DOC) policy, DC-ADM 803, *Inmate Mail and Incoming Publications*, directs mail inspectors to open and inspect all mail for contraband. Under this policy, however, legal mail may only be opened in the presence of the inmate and checked for contraband at that time.

As relevant here, between April 28, 2006, and July 15, 2008, Diaz filed eight grievances against SCI-Smithfield employees relating to the opening of his legal mail outside of his presence.[2] Facility Grievance Coordinator Lisa Hollibaugh received six of

---

[1] As we write only for the parties, we assume familiarity with the facts, which we refer to only as necessary to explain our decision.

[2] Additionally, Diaz filed two grievances solely related to SCI-Smithfield's handling of his outgoing mail, one of which was appealed through all three steps of the DOC grievance system.

The DOC employs a three-level administrative review procedure to handle inmate grievances. *See* DC-ADM 804, "Inmate Grievance System Policy." First, the inmate must file a written grievance. The Facility Grievance Coordinator must provide a written response within ten working days. Second, if unsuccessful, the inmate must appeal the facility grievance coordinator's response to the Superintendent. The superintendent then must decide the appeal within ten working days. Third, if the complaint still has not been resolved, the inmate must appeal the superintendent's decision to the Secretary's Office of Inmate Grievances and Appeals. This third and ultimate step is termed appealing to "final review." The Secretary's Office reviews the entire record, may consult with relevant bureaus within the DOC, and must issue a decision within thirty working days of the appeal.

these grievances, and Superintendent John Palakovich either received or responded to three of these grievances. In response to seven of these eight grievances, DOC employees admitted or failed to contest the substance of Diaz's claims, stating "grievance resolved" or "uphold inmate" as the final dispositions of Diaz's claim.

Of these eight grievances, Diaz appealed only one through all three steps of the DOC's grievance process to final review. On August 13, 2007, Diaz submitted a grievance (later assigned No. 197078-07), which Hollibaugh received on August 14. In the grievance, Diaz stated:

> Today, August 13, 2007, I received legal mail that was opened outside of my presence. It was clearly marked 'Eastern District of Pennsylvania Office of Clerk, Unites States District Court, Philadelphia, PA 19106-1797.' I have filed several grievances about my legal mail being opened and read outside of my presence, and my mail being tampered with and destroyed. Each response has been marked grievance denied or grievance resolved. But these violations continue. I don't know what it will take for these violations to stop.

Diaz requested that SCI-Smithfield "immediately stop these violations" and asked for $500,000 in damages.

Three days later, Business Manager Moyer returned an Initial Review Response to the grievance, which stated that the mailroom made a mistake in opening the legal mail, has been informed to cease this practice and will be more careful in the future. Moyer then denied Diaz's request for monetary compensation and selected "grievance resolved" as the appropriate disposition. Moyer copied Superintendent Palakovich on his Response.

On August 27, Diaz appealed this response, reasserting the substance of his initial grievance. Four days later, Superintendent Palakovich responded to Diaz's appeal. Palakovich characterized Moyer's response as "correct" and denied Diaz's appeal, stating that "[y]our mail is being processed in accordance with DC-ADM 803."

On August 29, Diaz appealed Palakovich's denial to the Chief Grievance Officer at the Secretary's Office of Inmate Grievances & Appeals. Diaz reiterated the substance of his initial grievance, and that, contrary to Superintendent Palakovich's response, his "mail *is not* being processed in accordance with DC-ADM 803."

On September 20, Chief Grievance Officer Kristen Reisinger upheld Diaz's appeal in part and denied it in part in a Final Appeal Decision. The Decision listed "Uphold Inmate" as the outcome and elaborated that "[i]t is the decision of this Office to overturn the responses provided at the institutional level" but went on to explain that Diaz's request for monetary compensation was "unwarranted" and therefore denied. Reisinger acknowledged that legal mail was mistakenly opened outside of Diaz's presence on August 13 and that the mailroom staff has been advised to cease this practice.

Diaz filed three subsequent grievances all claiming that the mailroom opened his legal mail outside of his presence.

**B. Litigation**

Diaz filed his complaint *pro se*[3] on December 3, 2007, naming as defendants Superintendent Palakovich, Facility Grievance Coordinator Lisa Hollibaugh, Mailroom Supervisor Peggy Everhart and Mail Inspectors Jane Does I and II all of SCI-Smithfield.

_____

[3] Diaz is now represented by *pro bono* counsel.

4

Diaz alleged that Everhart, and Jane Does I and II, opened his legal mail outside of his presence and that Hollibaugh and Palakovich furthered and permitted these actions to occur, all in violation of his First and Fourteenth Amendment rights. Diaz sought injunctive relief as well as compensatory and punitive damages, costs, and attorneys' fees.

Palakovich, Everhart and Hollibaugh answered the complaint and, after the close of discovery, moved for summary judgment. Diaz moved for leave to amend his original complaint to replace the two Jane Doe defendants with Staci Weaverling and Carolyn Weinfurther. Diaz then filed his Opposition to Defendants' Motion for Summary Judgment.

On March 26, 2009, the District Court denied Diaz's motion for leave to amend and granted defendants' motion for summary judgment. The District Court read the complaint as asserting two claims: an access to the courts claim and an improper handling of legal mail claim. The court granted summary judgment for Palakovich, Hollibaugh, and Everhart on the basis that they lacked sufficient personal involvement in opening Diaz's legal mail for 42 U.S.C. § 1983 liability to attach. The court denied Diaz's motion for leave to amend because it found that amendment – substituting Staci Weaverling and Carolyn Weinfurther for the fictitious defendants – would be futile. The court's examination of the record led it to conclude that there were two instances of legal mail being opened outside Diaz's presence, which was insufficient to state a pattern or

5

practice claim. The court also dismissed Diaz's access to the courts claim because Diaz failed to specify a legal claim that was impaired by defendants' conduct.[4]

## II. __Discussion__[5]

We review a district court's denial of a motion for leave to amend the complaint for an abuse of discretion, *see Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007), and we review de novo the district court's grant of summary judgment, *see Jackson v. Danberg*, 594 F.3d 210, 215 (3d Cir. 2010).

We have recognized a cause of action to address "[a] state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate," because such a practice "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (reaffirming the holding of *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir. 1995)). To assert a claim for improper legal mail handling in violation of the First Amendment, an inmate first must clear the Prison Litigation Reform Act's (PLRA) proper exhaustion hurdle, which requires inmates to comply with prison regulations in exhausting all available remedies before bringing suit. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007). In the present case, the District Court's failure to consider certain grievances related to a pattern of

---

[4] Diaz does not appeal dismissal of this access to courts claim, and we, therefore, do not address it further.

[5] The District Court had jurisdiction in this action pursuant to 28 U.S.C. § 1331 and 1343(a), and our jurisdiction is properly invoked pursuant to 28 U.S.C. § 1291.

opening legal mail outside an inmate's presence requires us to vacate both its grant of summary judgment and its denial of leave to amend the complaint.

## A. Grant of Summary Judgment

In granting summary judgment, the District Court found that all the grievances in the record, "[r]egardless of their exhaustion status," could not support supervisory liability claims as to Palakovich, Hollibaugh or Everhart.

Under § 1983, "'a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 & n.5 (3d Cir. 2010) (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty.*, 372 F.3d 572, 586 (3d Cir. 2004)).

Here, a reasonable factfinder could find that these defendants had knowledge of the violations through Diaz's grievances and acquiesced in the violations by failing to address a practice of opening legal mail outside of an inmate's presence. *See A.M.*, 372 F.3d at 586; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). The record demonstrates that Palakovich was copied on or responded to three of Diaz's grievances, Hollibaugh acknowledged receipt of nearly every one of Diaz's grievances, and Everhart had admitted knowledge of two violations and was directly responsible for supervising the mailroom that repeatedly opened Diaz's clearly marked legal mail outside of his presence. Thus, all three had notice of the improper legal mail handling. The record also does not establish that these defendants took sufficient, corrective action relating to the opening of legal mail to avoid acquiescing in their subordinates' actions. Considering the

7

evidence in the light most favorable to Diaz, we find summary judgment was improper. *See Jackson*, 594 F.3d at 215-16.

### B. Denial of Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that "the court should freely give leave when justice so requires." A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). For a proposed amendment to be futile, the complaint – as amended – must fail to state a claim upon which relief could be granted, that is, the same standard Federal Rule of Civil Procedure 12(b)(6) contemplates. *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 242-43 (3d Cir. 2010) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

The District Court denied leave to amend because it concluded that the complaint, even as amended, failed to state a claim for relief and, thus, amendment would be futile.[6] In examining the record, the District Court found two fully exhausted grievances, only one of which addressed the opening of his legal mail outside of Diaz's presence. The District Court also determined that, at most, Everhart had admitted that on two occasions Diaz's legal mail had been opened outside his presence. It then concluded that only two

---

[6] The District Court also denied the motion to amend on the ground that Diaz had not complied with M.D. Pa. Local Rule 7.5 or with Fed. R. Civ. P. 4(m). Because we are vacating and remanding, we reject these grounds without further discussion.

8

instances of opening legal mail outside an inmate's presence do not amount to a sufficient pattern or practice to state a claim. The District Court did not consider grievances which it found had not been fully exhausted.

We do not agree with this conclusion. Although the PLRA prohibits certain administratively unexhausted or procedurally defaulted grievances from forming the basis for a prison conditions action, a court must consider such documents extrinsic to a fully exhausted grievance as long as "such extrinsic evidence . . . was a contemporaneous part of the prison record and bore directly on the grievance" that formed the substance of the complaint. *Williams v. Beard*, 482 F. 3d 637, 640 (3d Cir. 2007).

Here, Diaz appealed to final review – *i.e.*, fully exhausted – one grievance relating to the opening of his legal mail outside of his presence and filed seven other grievances all complaining of the same issue. Those seven other grievances are contemporaneous parts of the prison record as they all address the same practice of improper legal mail handling and directly bear on the fully exhausted grievance addressing the identical issue. Taken together, these grievances suffice to state a claim for a pattern or practice of opening legal mail outside Diaz's presence. The District Court should have considered them in its futility analysis. *See Williams*, 482 F.3d at 640 (citing *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004)). [7]

In any case, the District Court wrongly concluded that certain of these grievances were unexhausted. Seven of eight grievances Diaz filed – relating to the opening his

---

[7] Moreover, the record does not indicate sufficient delay, bad faith, dilatory motive or prejudice to deny leave to amend. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

9

legal mail outside of his presence – were either given a final disposition of "grievance resolved" or "uphold inmate." There was no need to appeal such favorable grievance outcomes in order to exhaust administrative remedies under the DOC's Inmate Grievance System Policy and the PLRA. *See Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010) ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies.").

The District Court further erred in determining that Diaz's failure to name individual defendants in his grievances amounted to a procedural default under the PLRA. The procedural default component to the PLRA's exhaustion requirement requires "'proper exhaustion,' meaning that the prisoner must comply with all the administrative requirements and not merely wait until there are no administrative remedies 'available.'" *Williams*, 482 F.3d at 639 (quoting *Woodford*, 548 U.S. at 92-103). DOC grievance procedures "supply the yardstick" to determine whether Diaz procedurally defaulted his claim under the PLRA in failing to name the defendants individually in his grievances. We have interpreted substantially similar versions of the grievance system policy to require an inmate to identify specific individuals involved in the occurrences they grieve. *See Spruill*, 372 F.3d at 234 (analyzing DOC policy relating to naming individuals in grievances); *see also Williams*, 482 F.3d at 639-40. DOC employees, however, may excuse such procedural defaults "by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." *Spruill*, 372 F.3d at 234. Indeed, we reiterate that "'[t]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal

10

notice to a particular official that he may be sued.'" *Williams*, 482 F.3d at 640 (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Here, any procedural default that may have resulted from failing to name Hollibaugh and Palakovich in his fully exhausted grievance was excused by Hollibaugh acknowledging receipt of Diaz's grievance and Palakovich responding to Diaz's second-level appeal. *See Williams*, 482 F.3d at 640. Furthermore, any procedural default resulting from Diaz's failure to name individuals working in the SCI-Smithfield mailroom – Everhart and Jane Does I and II – was excused by SCI-Smithfield's Initial Review Response indicating that the grievance officer went "to the Mailroom to discuss the issue with Mailroom staff." The prison thus excused any omission of specific mailroom employees in Diaz's grievance by acknowledging in its response that the mailroom staff was "fairly within the compass of the prisoner's grievance." *Spruill*, 372 F.3d at 234.

## IV. Conclusion

For the foregoing reasons, we will vacate the grant of summary judgment, as well as the denial of Diaz's motion for leave to amend, and remand this action for further proceedings consistent with this opinion.